**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| JUAN SYLVESTER BARNES, | |
| Plaintiff, | |
| v. | **Civil Action No.:  1:21-CV-01011-TDC** |
| HORIZON HEATH, et al. | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CORIZON HEALTH, INC., ASRESAHEGN GETACHEW, M.D., AND BURNICE MACE, RN'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Defendants Corizon Health, Inc. ("Corizon"), Asresahegn Getachew, M.D., and Burnice Mace, RN ("Corizon Defendants"), by undersigned counsel, hereby submit this Memorandum of Law in support of their Motion to Dismiss or, Alternatively, for Summary Judgment.

## I.  STATEMENT OF FACTS

**A.      Plaintiff's Allegations**

Plaintiff claims that he has a surgically implanted rod of which Defendants were aware, but he was denied a bottom bunk accommodation. CM/ECF No. 1, P. 1. He alleges that Nurse Bernice saw him on January 10, 2021, after "Nurse Brittany advised [him] that Bernice said" to submit a sick call request on January 4, 2021. *Id*. at 2. Plaintiff claims his head was "busted open" and his cell mate had to stitch his wound. *Id*. Plaintiff claims that Nurse Bernice refused to look at his injuries to document them or look at an x-ray and instead told another nurse to write down that he was walking straight. *Id*. at 2-3. Plaintiff claims that Dr. Getachew was deliberately indifferent to his need for a sleep study. *Id*. at 4. He further claims that Dr. Getachew lied about

requesting a pain management consultation and sleep study between 2019 and 2021. *Id*. In relief, Plaintiff seeks monetary damages. *Id*. at 5.

On September 14, 2021, the Court screened Plaintiff's Complaint and permitted Plaintiff to proceed with Eighth Amendment claims against Corizon Health, Inc. ("Corizon"), Dr. Getachew, Dr. Benhur Mohammed, and Nurse Burnice Swan. CM/ECF No. 6.

**B.      Role of Defendant(s)**

Corizon Health, Inc. ("Corizon") is the contracted medical provider for the Department of Public Safety and Correctional Services. Exhibit A: Declaration of Dr. Asresahegn Getachew ¶ 2. Corizon became the contracted medical provider for the Department of Public Safety and Correctional Services on January 1, 2019. *Id*.

Dr. Asresahegn Getachew is employed by Corizon as a Regional Medical Director ("RMD") for North Branch Correctional Institution and Western Correctional Institution ("WCI"). Ex. A: ¶ 2. Dr. Getachew does not have the authority to approve or deny requests for off-site or specialist services. *Id*.

Burnice Mace is a Registered Nurse ("RN") employed by Corizon at WCI. Ex. B: Declaration of Burnice Mace, RN, BSN ¶ 2.

**C.      Plaintiff's Medical Care**

Plaintiff is a 38-year-old man with a history of chronic pain syndrome following a femur fracture and open reduction internal fixation of that fracture, dermatophytosis (ringworm), hypertension, obesity, opiate abuse, and migraines. Exhibit A-1: Plaintiff's Relevant Medical Records, BARNES MR-175, 212.

Plaintiff's relevant medical care dating from January 1, 2019, is set forth as follows. On February 22, 2019, Plaintiff returned from court and made no medical complaints. Ex. A-1: P. 239.

On August 29, 2019, a nurse saw Plaintiff in a strip cell waiting to go to his cell. Ex. A-1: P. 242. Plaintiff reported that he was fine. *Id*.

On October 1, 2019, Plaintiff submitted a health care request stating that he fell off his bunk. Ex. A-1: P. 134. He failed to appear for his nurse sick call appointment. *Id*.

On October 11, 2019, Plaintiff refused a nurse sick call appointment for complaints of pain. Ex. A-1: P. 152.

On December 12, 2019, Dr. Cedric Poku-Dankwah saw Plaintiff in chronic care for complaints of chronic pain syndrome and headaches. Ex. A: ¶ 11; Ex. A-1: PP. 250-51. Plaintiff requested Excedrin for headaches, an orthopedic evaluation for right femoral rod removal, and a bottom bunk accommodation. He stated that the rod in his right femur made him fall while climbing to the bunk bed. Upon examination, Plaintiff was in no apparent distress and exhibited normal musculature with no skeletal tenderness or joint deformity. Dr. Poku-Dankwah prescribed Excedrin for Plaintiff. He noted that Plaintiff's chronic pain syndrome was controlled. Dr. Poku-Danwah did not request an orthopedic assessment or order a bottom bunk accommodation for Plaintiff. Dr. Getachew does do not disagree with this decision. There is no indication from Dr. Poku-Dankwah's records that Plaintiff had any objective physical limitations demonstrating that an orthopedic assessment or bottom bunk accommodation were medically necessary. *Id*.

On February 16, 2020, a nurse saw Plaintiff for a possible seizure. Ex. A-1: P. 204. The nurse noted that Plaintiff was able to get off the floor without assistance and ambulate to a chair

outside the cell with a steady gait. Plaintiff initially stated that he had a history of seizures but, after the nurse's assessment, admitted that he did not have a history of seizures and did not have a seizure but had a miscommunication with his cell mate. *Id*.

On February 18, 2020, a nurse noted that Plaintiff ambulated to and from the medical unit with a steady gait and denied pain. Ex. A-1: P. 205.

On March 1, 2020, a nurse saw Plaintiff for complaints that he had not received his medication. Ex. A-1: PP. 208-09. The nurse noted that Plaintiff ambulated to and from the exam room with a steady gait. *Id*.

On March 11, 2020, Dr. JoGinder Mehtr saw Plaintiff in chronic care. Ex. A-1: PP. 212-14. Plaintiff reported migraines and right thigh pain. Upon examination, Plaintiff exhibited no swelling or abnormality in the right thigh. He requested ibuprofen. Dr. Mehtr assessed Plaintiff with stable chronic pain syndrome and prescribed ibuprofen. *Id*.

On March 22, 2020, Plaintiff submitted a health services request complaining that the rods had not been taken out of his leg. Ex. A-1: P. 117. On March 29, 2020, Plaintiff submitted a health services request complaining that he had not been treated for surgical rods in his leg. Ex. A-1: P. 118. A nurse advised him that off-site visits for surgery were not permitted at that time due to the COVID-19 crisis. *Id*. at 219.

On May 5, 2020, a nurse saw Plaintiff for complaints of vomiting. Ex. A-1: P. 218. Plaintiff was noted to ambulate to the medical room with a steady gait. *Id*.

On October 7, 2020, a nurse saw Plaintiff for complaints of right leg pain due to a recent basketball injury. Ex. A-1: PP. 223-24. Plaintiff ambulated to sick call. He stated that the only medication that provided him relief was Ultram (a narcotic-like pain medication). He requested a sleep study due to snoring and waking up during the night. He stated that he saw a provider who

advised him to lose weight and that he had lost 100 pounds since that appointment. Upon examination, the nurse noted that Plaintiff reported tenderness and pain with movement but he exhibited normal range of motion, no weakness, no swelling, and a normal gait. She issued muscle rub and referred him to a provider. *Id.*

On October 27, 2020, Dr. Benhur Mohammed saw Plaintiff for complaints of snoring and thigh pain. Ex. A-1: PP. 229-30. Plaintiff reported nightly snoring from the throat. He reported apnea during sleep and excessive fatigue. Plaintiff also reported thigh pain but denied bruising, instability, limping, or weakness. Plaintiff's balance and gait were intact. Dr. Mohammed renewed Plaintiff's muscle rub and Excedrin. He ordered an x-ray of Plaintiff's femur. *Id.* Dr. Mohammed also requested a sleep study test. *Id.* at 227-28.

On October 29, 2020, the Utilization Management Medical Director ("UMMD") determined that medical necessity for a sleep study was not demonstrated at that time. Ex. A: ¶ 20; Ex. A-1: PP. 252-54. The UMMD suggested an Epworth Sleep scale questionnaire, laboratory tests, and reevaluation after certain medications are titrated or stopped secondary to their effect on the central nervous system. Dr. Getachew reviewed the UMMD's recommendation and asked Dr. Mohammed to submit an Epworth Sleep questionnaire (a questionnaire used as a subjective measure of a patient's sleepiness). Dr. Getachew was not otherwise involved in Plaintiff's care. Specifically, Dr. Getachew did not personally evaluate Plaintiff between January 1, 2019, and the present. Moreover, Dr. Getachew is not aware of whether Dr. Mohammed conducted an Epworth Sleep questionnaire. Dr. Getachew was not aware that Plaintiff had any complaints regarding sleep apnea that had not been addressed by his primary care providers. Before Plaintiff initiated this lawsuit, Dr. Getachew was also unaware of Plaintiff's complaints of chronic pain. *Id.*

On November 5, 2020, Plaintiff underwent an x-ray of his right femur which showed no acute osseous abnormality. Ex. A-1: P. 200. The x-ray showed stable postsurgical changes with intact hardware. *Id*.

On December 25, 2020, Dr. Mohammed saw Plaintiff in chronic care. Ex. A-1: PP. 231-32. Plaintiff reported a history of fracture and a surgical procedure. He denied bruising, instability, limping, or weakness associated with his chronic pain complaints. Upon examination, Plaintiff exhibited normal musculature with no skeletal tenderness or joint deformity. Dr. Mohammed renewed Plaintiff's Excedrin and muscle rub and ordered laboratory testing. *Id*.

On January 4, 2021, Plaintiff submitted a health services request ("HSR") in which he complained that he injured himself while trying to climb up his bunk. Ex. A-1: P. 104.

Nurse Mace does not recall being made aware of Plaintiff's complaints on January 4, 2021, nor does she recall any interaction with him on that date. Ex. B: ¶ 4. If Plaintiff had come to the medication administration window or medical unit and complained of an injury, she would have seen him and written a note of that encounter. *Id*.

On January 8, 2021, a nurse saw Plaintiff for a blood pressure check. Ex. A-1: P. 161. The record reflects no complaints of a fall or other abnormality. *Id*.

On January 9, 2021, Plaintiff submitted an HSR complaining about an injury sustained in January 4, 2021. Ex. A-1: P. 203.

On January 10, 2021, Nurse Burnice Mace saw Plaintiff for a complaint that he hurt himself while trying to climb up a bunk. Ex. A-1: PP. 162-63; Ex. B: ¶ 9. Plaintiff stated that he hurt his hip, leg, head, and back. He requested an accommodation for a bottom bunk. He stated that he previously hurt himself while trying to climb up a bunk two months previously. Nurse Mace noted that Plaintiff ambulated with a smooth and steady gait. Upon examination, Nurse

Mace noted no injury to Plaintiff's hip, leg, head, and back. Nurse Mace noted that a bottom bunk was not indicated. Specifically, because Plaintiff appeared healthy and without injury, Nurse Mace did not believe that a bottom bunk was medically necessary. Accordingly, she did not contact a provider to obtain a bottom bunk accommodation for Plaintiff. Plaintiff had prescriptions for Excedrin Extra Strength and muscle rub at this time which Nurse Mace believed was sufficient to treat his complaints of minor musculoskeletal pain. *Id*.

Nurse Mace's January 10, 2021 note accurately documented her examination of Plaintiff and her observations of his clinical condition. Ex. B: ¶ 10. She did not fail to record any head or other injury. *Id*.

Moreover, Plaintiff's medical records do not reflect that his head was "busted open" at any time or that he sustained any injury to his hip, leg, head, or back on January 4, 2021. For example, on February 24, 2021, a nurse saw Plaintiff for complaints of snoring and shortness of breath during sleep. Ex. A-1: PP. 167-68. The nurse noted that Plaintiff was alert and oriented and denied chest pain and shortness of breath while awake. Plaintiff expressed no complaints of musculoskeletal pain or head injury. The nurse did not determine that Plaintiff required further follow-up by a provider. *Id*.

On April 16, 2021, Plaintiff failed to appear for a sick call appointment. Ex. A-1: PP. 141, 168.

On April 20, 2021, a nurse saw Plaintiff for complaints of hip and back pain which he stated arose from a fall in January 2021. Ex. A-1: PP. 169-70. Plaintiff was alert and oriented and exhibited no signs or symptoms of distress. Plaintiff reported pain with movement but no tenderness upon examination. He also exhibited normal range of motion and no weakness or swelling. He also had a normal gait. The nurse referred Plaintiff to a provider. *Id*.

On May 12, 2021, Dr. Patrick O'Neil saw Plaintiff in chronic care. Ex. A-1: PP. 175-76. Dr. O'Neil noted Plaintiff's history of a femur fracture with open reduction internal fixation many years ago, opiate abuse, prescription medication violations while incarcerated, and obesity. Plaintiff requested a patient requested a patient care conference to discuss his bottom bunk status, which he stated he required due to pain from his surgical rod. Dr. O'Neil noted that Plaintiff's chronic pain medications had previously been discontinued due to Plaintiff's Suboxone abuse and reported prescription medication hoarding and intent to distribute. Plaintiff admitted to abusing Suboxone but denied hoarding or diverting medications. Plaintiff denied fatigue. Upon examination, Plaintiff was in no apparent distress and exhibited normal musculature without skeletal tenderness or joint deformity. Dr. O'Neil renewed Plaintiff's Excedrin and requested that a patient care conference be scheduled. *Id.*

On June 1, 2021, a nurse noted that Plaintiff ambulated independently with a steady gait. Ex. A-1: PP. 178-80. She noted that Plaintiff was alert and oriented and ambulated independently with a steady gait. *Id.*

On June 14, 2021, a nurse saw Plaintiff for a request for Ultram. Ex. A-1: PP. 186. The nurse advised Plaintiff to take Tylenol or Motrin for pain. *Id.*

On August 27, 2021, a nurse saw Plaintiff, who reported that he was assaulted in July but did not report it. Ex. A-1: PP. 191-92. The nurse noted no injuries upon examination. *Id.* Also on August 27, 2021, a nurse practitioner saw Plaintiff following pepper spray exposure. Ex. A-1: PP. 193-94. Plaintiff ambulated into the trauma room and exhibited mild ecchymosis on his right forearm. Plaintiff reported chronic low back pain but denied any other concerns. He denied fatigue. He stated that he was unsure how high up the fence he was able to climb but jumped off the fence when he was exposed to pepper spray. Plaintiff ambulated out of the room. *Id.*

Plaintiff's ability to climb a fence is an indication that he is able to climb to an upper bunk. Ex. A: ¶ 30.

Plaintiff's medical records are devoid of evidence that he requires a bottom bunk. Ex. A: ¶ 31. Though Plaintiff has intermittently reported falls as a result of climbing to a top bunk, these reports are not supported by any physical examination; specifically, there is no indication that Plaintiff has been injured as a result of any purported fall. Moreover, Plaintiff's x-ray revealed no acute abnormalities and stable post-surgical changes. Plaintiff has also exhibited no physical limitations indicating that he is unable to climb to a top bunk. As noted above, Plaintiff was able to climb a fence on August 27, 2021. *Id.*

Plaintiff has also received appropriate medications for his chronic pain syndrome. Ex. A: ¶ 32. While Plaintiff seeks Ultram, narcotic and narcotic-like medications are not appropriate for treatment of chronic pain because of their addictive properties, particularly for patients such as Plaintiff who have a history of opiate abuse and diversion. Plaintiff also has exhibited no signs or symptoms of acute pain indicating that narcotics are medically necessary. Specifically, at no time has any provider noted an abnormal gait, swelling, or impairment of activities of daily living. Further, as noted above, Plaintiff's objective diagnostic testing revealed stable post-surgical changes. *Id.*

Plaintiff's medical records do not indicate ongoing complaints related to sleep apnea. Ex. A: ¶ 33. While Plaintiff expressed subjective complaints of snoring and fatigue, he was alert and oriented at appointments on April 20, 2021, June 1, 2021, and denied fatigue at appointments on May 12, 2021, and August 27, 2021. Ex. A-1: PP. 169-70, 175-76, 178-80, 193-94. Accordingly, there is no indication that a sleep study is medically necessary for Plaintiff at this time. *Id.*

Plaintiff has been provided appropriate medical treatment for his medical conditions.  Ex. A: ¶ 34. Dr. Getachew did not disregard Plaintiff's medical complaints at any time. *Id*. Nurse Mace did not deny Plaintiff medical treatment for any medical concerns or symptoms. Ex. B: ¶ 18. She did not falsify any of Plaintiff's medical records, including records of her January 10, 2021 examination of Plaintiff. She also never disregarded or otherwise ignored any of his medical needs. *Id*.

## II. LEGAL ARGUMENT

### A.      Motions to Dismiss

As to a 12(b)(6) motion to dismiss, a plaintiff fails to state a claim when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). This requirement "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Supreme Court has held that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). However, the Fourth Circuit has "not read *Erickson* to undermine *Twombly's* requirement that a pleading contain more than labels and conclusions."

*Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying *Twombly* standard in dismissing pro se complaint); *accord Atherton v. Dist. of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint ... 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'") (quoting *Erickson*, 551 U.S. at 94 and *Iqbal*, 556 U.S. at 679).

**B.       Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate against a plaintiff who fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Failure to demonstrate a genuine issue for trial will result in summary judgment. *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 951 (4th Cir. 1995).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The Court may rely on only facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). "Unsupported speculation is not sufficient to defeat a

summary judgment motion." *Id.* (citing *Ash v. United Parcel Serv.*, 800 F.2d 409, 411-12 (4th Cir. 1986)).

**C.      Deliberate Indifference Claims Under 42 U.S.C. § 1983**

Federal claims by prisoners that they received constitutionally deficient medical care in violation of the Eighth Amendment are governed by the deliberate indifference standard. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* The "deliberate indifference" standard is made up of (1) an objective component requiring that the pain or condition be sufficiently serious; and (2) a subjective component requiring that the offending officials acted with a sufficiently culpable state of mind. *Id.* at 104-06. The objective component is satisfied by a serious medical condition and the subjective component is satisfied by showing deliberate indifference by prison officials. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). "[A] 'serious ... medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

"[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). It requires that a prison official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not deliberately indifferent if she did not actually draw the inference that the prisoner was exposed to a specific risk of harm. *Id.* at 844; *see also Rich v. Bruce*, 129 F.3d 336, 338 (4th

Cir. 1997). Indeed, absent subjective knowledge, a prison official is not liable even "if the risk was obvious and a reasonable prison official would have noticed it." *Farmer*, 511 U.S. at 842.

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *accord Johnson*, 145 F.3d at 168. "Nor does a prisoner's disagreement with medical personnel over the course of his treatment make out a cause of action." *Taylor v. Bennett*, 105 F. Supp.2d 483, 487 (E.D. Va. 2000) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)).

Officials can only be held liable for their own conduct. *Iqbal*, 556 U.S. at 676-77; *see also Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014) ("[S]upervisors may not be held liable under 42 U.S.C. § 1983 for actions of subordinate employees unless the supervisors have 'direct culpability' in causing the plaintiff's injuries.") (citing *McWilliams v. Fairfax Cnty. Bd. of Supervisors*, 72 F.3d 1191, 1197 (4th Cir. 1996)), *abrogated on other grounds by Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998); *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").

**D.    Plaintiff Failed to State a Claim Against Defendants**

      *i.      Corizon*

There is no *respondeat superior* liability under 42 U.S.C. § 1983, and local governments or corporations performing a functionally traditionally performed by the government may not be sued under § 1983 simply for employing a tortfeasor. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990).

> "Although the 'principles of § 1983 policy-maker liability were articulated in the context of suits brought against municipalities and other local government defendants,' they 'are equally applicable to a private corporation acting under color of law when an employee exercises final policymaking authority concerning an action that allegedly causes a deprivation of federal rights.'"

*Safar v. Corizon, Inc.*, No. GJH-16-3277, 2018 WL 6505499, at *6 (D. Md. Dec. 11, 2018) (Slip Copy) (quotations omitted); *see also Fields v. Corizon Health, Inc.*, 490 Fed. App'x. 174, 181-182 (11th Cir. 2012) (finding that private entity providing medical services to inmates served a state function and could be held liable under § 1983).

Plaintiffs suing under § 1983 seeking to impose liability on a municipality must adequately plead and prove the existence of an official policy or custom "that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Similarly, "private corporations can only be held liable under § 1983 if 'an official policy or custom of the corporation causes the alleged deprivation of federal rights.'" *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003) (quoting *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999)).

In his Complaint, Plaintiff does not include any specific allegations regarding a Corizon policy or practice that violated his constitutional rights. *See* CM/ECF No. 1. Plaintiff instead apparently seeks to hold Corizon liable for the purported acts or omissions of its employees. Corizon is a private corporation that has contracted with the State of Maryland to provide medical services to inmates at certain institutions and it administers medical care only through its agents and employees. Accordingly, Corizon's alleged liability in this case is—by definition—purely vicarious. Because principles of *respondeat superior* do not apply to § 1983 actions, the

claims against Corizon must be dismissed. *See Monell*, 436 U.S. at 691; *Safar*, 2018 WL 6505499 at \*6.

Plaintiff has failed to adequately plead the existence of an official policy or custom attributable to Corizon that proximately caused the deprivation of his rights, and he has failed to state a claim upon which relief may be granted. Accordingly, Corizon must be dismissed. *See Rodriguez*, 338 F.3d at 355; *Jordan by Jordan*, 15 F.3d at 338.

ii.     *Dr. Getachew*

Plaintiff is also unable to establish deliberate indifference against Dr. Getachew. Plaintiff alleges that Dr. Getachew failed to request a sleep study and a pain management consultation for him between 2019 and 2021. CM/ECF No. 1, P. 4. At most, Plaintiff disagrees with Dr. Getachew regarding the appropriate course of his medical treatment. This disagreement fails to state a claim for deliberate indifference. *Wright*, 766 F.2d at 849; *Taylor*, 105 F. Supp.2d at 487. To the extent Plaintiff alleges Dr. Getachew was negligent or committed medical malpractice, he fails to state a claim for deliberate indifference under § 1983. *Estelle*, 429 U.S. at 106; *Johnson*, 145 F.3d at 168.

iii.     *Nurse Mace*

Plaintiff's allegations against Nurse Mace are also insufficient to support an Eighth Amendment claim. Plaintiff alleges that Nurse Mace advised him on January 4, 2021, as to how to properly seek medical care. CM/ECF No. 1, P. 1. He claims that Nurse Mace failed to properly assess him and failed to properly document his injuries. *Id.* at 2-3. Plaintiff's claims sound in negligence, not deliberate indifference. However, negligence is insufficient to support a deliberate indifference claim under § 1983. *Estelle*, 429 U.S. at 106; *Johnson*, 145 F.3d at 168.

Plaintiff has failed to state a claim against Defendants, and his claims against them must be dismissed.

**E.      Defendants are Entitled to Summary Judgment**

Even to assume, arguendo, that Plaintiff stated a claim against Defendants sufficient to survive a 12(b)(6) motion, Defendants are still entitled to summary judgment. The declaration of Dr. Asresahegn Getachew, attached hereto as Exhibit A, a true and correct copy of Plaintiff's relevant medical records, attached to Dr. Getachew's Declaration as Exhibit A-1, and the declaration of Burnice Mace, RN, demonstrate that Defendants did not violate Plaintiff's Eighth Amendment rights, and that summary judgment should be granted in their favor.[1]

*i.      Corizon*

No Corizon policy, practice, or custom led to a violation of Plaintiff's Eighth Amendment rights. As previously discussed, Plaintiff fails to state a claim against Corizon. He fails to identify any policy, custom, or procedure of Corizon which caused him harm, and instead seeks to hold Corizon liable for the acts or omissions of Corizon's employees through the doctrine of *respondeat superior*. *See generally* CM/ECF No. 1. This he cannot do. *See Monell*, 436 U.S. at 691. Plaintiff's claim further fails because, as shown below, he cannot establish that Dr. Getachew or Nurse Mace violated his constitutional rights. *See Jackson v. Pena*, 28 F. Supp.3d 423, 433 (D. Md. 2014) (finding that the plaintiff failed to satisfy the prerequisite to a sufficient *Monell claim*, that his constitutional rights were violated by the Baltimore Police Department's employees). Additionally, Plaintiff received appropriate medical treatment for his

---

[1] "In determining whether a prisoner has received adequate medical treatment, this Court is entitled to rely on the affidavits of medical personnel and prison medical records kept in the ordinary course of operation." *Bennett v. Reed*, 534 F. Supp. 83, 86 (E.D.N.C. 1981), *aff'd*, 676 F.2d 690 (4th Cir. 1982). When "it appears from the entire record that the prison medical authorities have made a sincere and reasonable effort to handle plaintiff's medical problems, plaintiff's constitutional rights have not been violated pursuant to 42 U.S.C. § 1983." *Id.* at 87.

medical complaints, including those related to his complaints of pain and sleep issues. *See* Ex. A: ¶ 34. As demonstrated by his medical records, he has been regularly assessed by the medical staff through chronic care and in response to his health services requests, undergone diagnostic testing, and received medication including Excedrin and muscle rub. *See generally* Ex. A-1. The evidence and argument below thus demonstrate no violation of Plaintiff's constitutional rights. With no underlying constitutional violation, Corizon cannot be liable. Accordingly, Plaintiff's claims against Corizon must be dismissed.

      ii.      *Dr. Getachew*

While Plaintiff alleges that Dr. Getachew lied to him about requesting a sleep study and pain management consultation between 2019 and 2021, Dr. Getachew was not directly involved in Plaintiff's medical treatment during this period and did not make any representations to Plaintiff about his medical care. *See* Ex. A: ¶¶ 7-30. Dr. Getachew also did not make any decision regarding Plaintiff's medical treatment, nor did he fail to address any medical need of which he was aware. *Id*. Plaintiff cannot hold Dr. Getachew liable for the perceived acts or omissions of other individuals. *Ashcroft*, 556 U.S. at 663 (noting that a government official may only be found liable for his own individual actions).

Dr. Getachew's only involvement with Plaintiff's medical treatment was to request that Dr. Mohammed submit an Epworth Sleep questionnaire as recommended by the UMMD. Ex. A: ¶ 20. Dr. Getachew is unaware of whether the request was followed and was not aware of any complaints expressed by Plaintiff regarding sleep apnea that had not been addressed by his primary care providers. *Id*. Dr. Getachew was also unaware of Plaintiff's complaints of chronic pain before this lawsuit. *Id*. Absent subjective awareness of a risk of serious harm, Plaintiff cannot maintain an Eighth Amendment claim against Dr. Getachew. *Farmer*, 511 U.S. at 844.

Plaintiff's claim further fails because he cannot demonstrate that he was harmed by any allegedly delayed sleep study. Ex. A: ¶¶ 33-34. As noted above, Plaintiff has exhibited no objective signs of fatigue at appointments on April 20, 2021, June 1, 2021, and denied fatigue at appointments on May 12, 2021, and August 27, 2021. Ex. A-1: PP. 169-70, 175-76, 178-80, 193-94. Plaintiff's medical records indicate instead that a sleep study is not medically necessary at this time. Ex. A: ¶ 33. Because Plaintiff has provided no objective medical evidence that any perceived delay caused him substantial harm, his Eighth Amendment claim should be dismissed. *Webb v. Hamidullah*, 281 Fed. Appx. 159, 166, n. 13 (4th Cir. 2008) (unpublished).

    *iii.*    *Nurse Mace*

Plaintiff claims Nurse Mace instructed another nurse to tell him to submit a health care request after he purportedly fell from a bunk on January 4, 2021. CM/ECF No. 1, P. 2. Plaintiff does not allege that Nurse Mace was aware of any of Plaintiff's purported injuries on January 4, 2021, and Nurse Mace does not recall being made aware of Mr. Barnes' complaints on January 4, 2021. *Id.*; Ex. B: ¶ 5. Both Plaintiff's allegations and the record indicate that Nurse Mace did not ignore a risk of substantial risk of serious harm to Plaintiff on January 4, 2021. *Id.*

Plaintiff claims that, after Nurse Mace examined him on January 10, 2021, she failed to provide him with a bottom bunk accommodation and failed to properly document or treat his post-fall injuries. CM/ECF No. 1, PP. 2-3. On January 10, 2021, Nurse Mace saw Plaintiff for his complaints that he hurt himself while trying to climb up a bunk. Ex. A: ¶ 9. Nurse Mace noted that he ambulated with a smooth and steady gait and noted no injury to his hip, leg, head, and back. Because Plaintiff appeared healthy and without injury, Nurse Mace did not believe that a bottom bunk accommodation was necessary and did not refer Plaintiff to a provider at that time. Nurse Mace also believed that Plaintiff's prescriptions for Excedrin Extra Strength and

muscle rub were sufficient for his complaints of minor musculoskeletal pain. *Id*. Nurse Mace did not fail to record any injury to Plaintiff on January 10, 2021. *Id*. ¶ 10. Nurse Mace examined Plaintiff in response to his complaints and treated Plaintiff in accordance with that examination. While Plaintiff may disagree with Nurse Mace's medical judgment, that disagreement does not amount to deliberate indifference. *Wright*, 766 F.2d at 849; *Taylor*, 105 F. Supp.2d at 487.

Plaintiff's medical records also do not support his allegations that his head was "busted open" at any time or that he sustained any injury to his hip, leg, head, or back on January 4, 2021. For example, Plaintiff made no complaints of a fall or any other abnormality when a nurse saw him for a blood pressure check on January 8, 2021. Ex. A-1: P. 161. He also expressed no complaints of musculoskeletal pain or head injury at an appointment on February 24, 2021. *Id*. at 167. He failed to appear for a sick call appointment on April 16, 2021. *Id*. at 168. Plaintiff also exhibited no hip, leg, head, or back limitations, including impaired range of motion, at appointments on April 20, 2021, May 12, 2021, June 1, 2021, and August 27, 2021. *Id*. at 169-71, 175-76, 178-80, 191-95. And while Plaintiff alleges that he requires a bottom bunk accommodation due to his surgical history, his x-ray showed stable post-surgical changes, and he has exhibited no physical limitations indicating that he is unable to climb to a top bunk. Ex. A: ¶ 31. Indeed, Plaintiff was able to climb a fence on August 27, 2021, before jumping off due to pepper spray exposure. Ex. A-1: PP. 193-94.

Ultimately, Plaintiff's medical records indicate that he has received thorough medical treatment in response to his complaints. As set forth above, Nurse Mace took prudent and reasonable steps to balance treatment of Plaintiff's subjective musculoskeletal complaints with her objective examinations and medical knowledge. Accordingly, the Court should grant Defendants' motion for summary judgment and dismiss Plaintiff's claims with prejudice.

### III.  CONCLUSION

Defendants Corizon Health, Inc., Asresahegn Getachew, M.D., and Burnice Mace, RN

respectfully request that Plaintiff's suit against them be dismissed for failure to state a claim or,

since no dispute of material fact exists, that summary judgment be entered in their favor.

Respectfully submitted, this 12th day of January, 2022.

> **MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**
>
> By: /s/ *Megan T. Mantzavinos*
>     Megan T. Mantzavinos
>     Bar Number:  16416
>     mmantzavinos@moodklaw.com
>     Sarah C. Boehme
>     Bar Number: 22334
>     sboehme@moodklaw.com
>     600 Baltimore Avenue, #305
>     Towson, Maryland  21204
>     (410) 339-6880
>     (410) 339-6881 (Fax)
>     *Attorney for Corizon Health, Inc., Asresahegn Getachew, M.D., and Burnice Mace, RN*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of January, 2022, a copy of the foregoing

document was electronically transmitted to this court and mailed first class, postage pre-paid to:

Juan Sylvester Barnes
#409797
13800 McMullen Highway
Cumberland, MD  21502

*Pro Se Plaintiff*

> /s/ *Megan T. Mantzavinos*