# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JUAN SYLVESTER BARNES,

    Plaintiff,

    v.

BURNICE MACE, *Nurse R.N.*,
DR. GETACHEW, M.D.,
DR. MOHAMMED, M.D.,
CORIZON HEALTH,
WCI WARDEN and
NBCI WARDEN,

    Defendants.

Civil Action No.:  TDC-21-1011

## MEMORANDUM OPINION

Plaintiff Juan Sylvester Barnes, an inmate at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed a Complaint under 42 U.S.C. § 1983 against Defendants Corizon Health ("Corizon"), Dr. Asresahegn Getachew, Nurse Burnice Mace (formerly Burnice Swan), and Dr. Benhur Mohammed (collectively, the "Medical Defendants") and Wardens Jeff Nines and Ronald S. Weber (collectively, the "State Defendants"). In the Complaint, Barnes alleges that while he was incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, Defendants denied him lower bunk status, putting him at risk of serious injury, and failed to provide him with adequate medical care, in violation of the Eighth Amendment to the United States Constitution.

Pending before the Court are separate Motions to Dismiss or, in the Alternative, Motions for Summary Judgment filed by the Medical Defendants and by the State Defendants. Upon

review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions will be GRANTED.

## BACKGROUND

### I.    The Complaint

In his Complaint, Barnes alleges that he has various health conditions that make it difficult for him to climb to the top bunk, including a surgically implanted rod in his leg. Because there is no ladder on the bunk bed, he has to stand on a chair or the sink and jump to the top bunk, putting him at risk of serious injury. On one occasion on January 4, 2021, he fell while trying to get to the top bunk and sustained injuries. On April 20, 2021, he fell again. As a result, Barnes sleeps on the cell floor, even though there are mice on the floor at night. Barnes asserts that in the past, a doctor approved him for lower bunk status, but he acknowledges that every doctor since has denied him lower bunk status. Barnes asserts that Defendants have improperly denied him lower bunk status.

Barnes further alleges that he received inadequate medical treatment from Nurse Mace following his fall on January 4, 2021, including that she delayed seeing him for seven days after his injury, then failed to examine him, document his injuries, or order an x-ray. He asserts that his cellmate actually provided stitches to his head.

Barnes also alleges that Dr. Getachew has provided him with inadequate medical care because since 2019, he has delayed or prevented a consultation for pain management and a sleep study to address sleep apnea. He alleges that Dr. Mohammed lied about ordering a pain management consultation and a sleep study. He seeks $2,000,000 in punitive damages and $500,000 in compensatory damages.

Finally, Barnes makes a vague reference to retaliation, in which he states, "1983 claim needed when defendants were denied summary judgment then given the 28 to try and convince judge not [to] den[y] summary judgment for good they took this as victory and retaliated again this time not giving treatment at all not following up on chronic care visits that's mandatory and policy." Compl. at 1, ECF No. 1. Barnes provides no further facts regarding this claim, which will be dismissed pursuant to 28 U.S.C. §§ 1915(e) and § 1915A for failure to state a claim.

## II.    Chronic Pain and Lower Bunk Status

On October 1, 2019, Barnes filed a sick call request stating that he fell off his bunk bed. He stated that he was physically unable to climb into the top bunk due to a rod surgically implanted in his leg, and he requested renewal of his lower bunk status, which he had been requesting since 2015.

On December 12, 2019, Barnes saw Dr. Cedric Poku-Dankway and requested an orthopedic evaluation to have the rod in his right leg removed. He also requested a lower bunk because the rod in his right femur makes him fall when he climbs to the upper bunk. Dr. Poku-Dankway noted that Barnes was in no apparent distress, had normal musculature with no skeletal tenderness or joint deformity, and that his extremities appeared normal. Dr. Poku-Dankway did not order lower bunk status for Barnes.

During the December 12, 2019 medical visit, Barnes also requested Excedrin because of headaches. Dr. Poku-Dankway prescribed Excedrin for pain and ordered a chronic care visit with internal medicine in three months. At various times in 2020, Barnes submitted sick call requests relating to his pain medication, but the medical records reflect that he received refills of Excedrin consistently through October 2020, including in January 2020, March 2020, April 2020, and September 2020.

3

On March 11, 2020, Barnes saw Dr. JoGinder P. Mehtr for a chronic care visit. Dr. Mehtr noted that Barnes had experienced migraines and right thigh pain since 2019. Dr. Mehtr did not find any swelling or any abnormality in the right thigh and prescribed Wal-Profen (Ibuprofen) as an additional pain medication.

In March 2020, Barnes submitted multiple sick call requests asking when the rod could be removed from his leg. On May 29, 2020, Corizon informed Barnes that his request for surgery on his leg could not be granted because no off-site visits were then being permitted due to the COVID-19 pandemic.

On September 27, 2020, Barnes submitted a sick call request complaining that he was being denied treatment for chronic pain. On October 7, 2020, Barnes saw Nurse Stella M. Fetters and complained of right leg pain apparently due to a basketball injury that occurred in September 2020. Nurse Fetters found tenderness and pain with the movement of the leg. She advised that he take his current medications as well as a muscle rub and referred him to a physician.

On October 27, 2020, Barnes saw Dr. Mohammed, who ordered an x-ray of Barnes's right femur. On November 5, 2020, Barnes underwent the x-ray, which showed no evidence of an acute fracture, no acute osseous abnormality, and that the rod previously inserted was stable and aligned.

On December 25, 2020, Barnes saw Dr. Mohammed for a chronic care follow-up visit. He found Barnes's chronic pain to be stable with current therapy. He scheduled a follow-up chronic care visit for pain management in three months and ordered lab tests.

On January 4, 2021, Barnes filed a sick call request stating that he hurt himself trying to climb up to the top bunk and also requested a renewal of his lower bunk status. On January 6 and 8, 2021, Barnes saw Nurse Susan Pryor to have his blood pressure checked. On January 9, 2021,

4

Barnes filed second sick call request about his fall from his bunk and stated that his head, leg, and hip hurt.

On January 10, 2021, Barnes saw Nurse Mace and reported that he had hurt himself while climbing to the top bunk on January 4, 2021. He reported injuries to his hip, leg, head, and back and requested a lower bunk. Nurse Mace did not perceive any injury and observed that Barnes walked with a smooth, steady gait. She concluded that a lower bunk was not necessary at that time. Barnes's prescriptions for Excedrin and a muscle rub were continued at least until April 25, 2021.

In a declaration, Nurse Mace has stated that she was not aware of Barnes's injury on January 4, 2021 and thus did not deny medical treatment to him on that day, that when she examined Barnes on January 10, 2021, she found no observable injury to his hip, leg, head, or back, and that she believed the Excedrin and muscle rub that were prescribed to him were sufficient to treat his minor musculoskeletal pain. She also concluded that based on her observations, a lower bunk was not medically necessary.

On March 30, 2021, Barnes submitted a sick call request complaining that he still had pain from his January 4, 2021 injury. On April 13, 2021, Barnes submitted additional sick call requests complaining that he had head, hip, leg, and back pain and stating that Nurse Swan had not even looked at his injuries. He also requested a pain management consultation in order to consider an increase in his pain medication.

On April 20, 2021, Barnes saw Nurse Amethyst P. Marsh and complained of continuing hip and back pain from his January 2021 fall. Nurse Marsh noted that he walked to the clinic independently, had a steady gait, and was not in distress. She referred him to a medical provider.

On May 10, 2021, after the Complaint was filed in this case, Barnes submitted a sick call request stating that he fell off the bunk bed again and had a swollen leg and pain in his groin. He requested a renewal of his lower bunk status because he is overweight and handicapped. On May 12, 2021, Barnes saw Dr. Patrick F. O'Neil and requested a patient care conference to discuss lower bunk status because of the rod in his leg. Dr. O'Neil noted that Barnes was in no apparent distress, had normal musculature and no skeletal tenderness or joint deformity, and was alert and oriented. Dr. O'Neil requested a patient care conference at which to discuss lower bunk status.

In a declaration, Dr. Getachew, the Regional Medical Director of Corizon, has asserted that based on the medical records, Barnes received appropriate medications for his chronic pain, and that he "exhibited no signs or symptoms of acute pain indicating that narcotics are medically necessary." Getachew Decl. ¶ 32, Med. Defs.' Mot. Ex. A, ECF No. 25-3. Dr. Getachew also asserted that a bottom bunk is not medically indicated. Specifically, Dr. Getachew stated that "[t]he patient's medical records are devoid of evidence that he requires a bottom bunk," that "there is no indication that the patient has been injured as a result of any purported fall," and that the November 2020 "x-ray revealed no acute abnormalities and stable post-surgical changes." *Id.* ¶ 31. He also stated that "at no time has any provider noted an abnormal gait, swelling, or impairment of activities of daily living." *Id.* ¶ 32.

## III.   Sleep Study

On September 27, 2020 and October 3, 2020, Barnes submitted sick call requests asking for a sleep study. During the October 7, 2020 visit with Nurse Fetters, Barnes requested a sleep study because he snores and wakes up during the night. He reported that when he raised this issue four years before, he was told to lose weight to help address his snoring, but since then he had lost 100 pounds and still had the same issue.

6

During the October 27, 2020 visit, Dr. Mohammed requested a sleep study because of excessive fatigue. However, on October 29, 2020, the Corizon Utilization Management Medical Director determined that the sleep study was not medically necessary and instead suggested "an Epworth Sleep scale questionnaire," laboratory tests, and reevaluation after certain medications were stopped. Getachew Decl. ¶ 20. It is unclear whether the questionnaire was completed.

On February 24, 2021, Barnes saw Nurse Fidelis E. Atianjoh and again complained of snoring and shortness of breath while sleeping. On March 30, 2021, Barnes submitted a sick call request inquiring about a sleep apnea study because his snoring was "torture" to his cell mates. Med. Records at 14, Med. Defs.' Mot. Ex. A1, ECF No. 29-3.

In a declaration submitted with the Motion, Dr. Getachew has asserted that the "medical records do not indicate ongoing complaints related to sleep apnea" and that "there is no indication that a sleep study is medically necessary for the patient at this time." Getachew Decl. ¶ 33.

## IV.  Administrative Remedy Procedure Complaints

According to records submitted by the State Defendants, Barnes filed three Administrative Remedy Procedure complaints ("ARP") relating to the issues asserted in the Complaint. On January 4, 2021, Barnes filed ARP No. WCI-0052-21, in which he stated that he fell while attempting to climb to the top bunk and asserted that medical personnel were responsible for his injuries because they did not renew his lower bunk status. He reported that he was in too much pain to climb to the top bunk and that as a result he had to sleep on the floor with mice. This ARP was dismissed on January 26, 2021 because the x-ray taken on November 5, 2020 had shown no acute fractures, the rod in Barnes's leg was intact and well-aligned, and Nurse Mace had evaluated Barnes on January 10, 2021 and determined that a lower bunk was not medically necessary. As

reported in a declaration from the NBCI ARP Coordinator, Barnes did not appeal the denial of this ARP.

Next, on April 17, 2021, Barnes filed ARP No. WCI-0592-21 in which he stated that Corizon had failed to provide him with a consultation for pain management and with a sleep study, and that medical providers had not responded to certain sick calls. This ARP was procedurally dismissed on April 19, 2021 because more information was required, including the dates of the sick calls.

On May 10, 2021, Barnes filed ARP No. WCI-0725-21 in which he reported that he had been injured again while trying to climb up to the top bunk and that medical providers were refusing to renew his lower bunk status. This ARP was procedurally dismissed with instructions to provide the date of the fall and other information. On May 21, 2021, Barnes resubmitted that ARP and stated that he had asked for ladders to be installed on the bunks because he kept falling off and hurting himself when climbing up to the top bunk, and he again complained that the medical staff was not examining him, documenting his injuries, or giving him lower bunk status. This ARP was also dismissed for procedural reasons.

## DISCUSSION

The State Defendants seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In their Motion, the State Defendants argue that (1) Barnes failed to exhaust his administrative remedies; (2) Barnes has neither alleged or established a claim of supervisory liability; (3) the evidence does not support a finding that the State Defendants denied necessary medical care to Barnes or otherwise subjected him to conditions of confinement which violated his constitutional rights; and (4) they are entitled to qualified immunity.

8

The Medical Defendants also seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In their Motion, the Medical Defendants argue that the record does not support a finding of deliberate indifference to a serious medical need. Further, Corizon argues that the claims against it should be dismissed because Barnes has not alleged or established any official custom or policy by which Corizon deprived him of his federal rights.

## I.     Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants have titled their motions as Motions to Dismiss or, in the Alternative, Motions for Summary Judgment. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside

9

the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the titles of Defendants' Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Although Barnes has submitted a memorandum in opposition to the Motions, he has not asserted that he needs additional discovery in order to address the Motions. The Court therefore will construe Defendants' Motions as motions for summary judgment as to the arguments for which consideration of the attached exhibits is necessary.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motions, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*,

346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.    State Defendants

The State Defendants primarily argue that the claims against them should be dismissed because Barnes did not exhaust available administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2018). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," when the procedure is "so opaque that it becomes,

11

practically speaking, incapable of use," or when "prison administrators thwart inmates from taking advantage of [filing grievances] through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

In Maryland prisons, for the type of grievances asserted by Barnes, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2022). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. *Id.* § 12.02.28.05(D)(1) (requiring filing with the "managing official"); *id.* § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); *id.* § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *Id.* § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (LexisNexis 2017); Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in the appropriate Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Here, Barnes filed several ARPs during the relevant time period, some of which arguably included complaints that correctional officers were denying him lower bunk status and were not arranging for proper medical treatment. As to ARP No. WCI-0052-21, filed on or about January 8, 2021, that ARP was denied by the Warden on January 26, 2021, and the State Defendants have submitted a declaration from the ARP Coordinator attesting that it was never appealed to the Commissioner of Correction. Barnes has provided no information to refute this claim. Barnes therefore did not exhaust administrative remedies through this ARP.

12

A second ARP No. WCI-0592-21, filed on or about April 17, 2021 and denied for procedural reasons on April 19, 2021, complained about the failure to provide Barnes with a consultation for pain management and a sleep apnea study and is therefore unrelated to the allegations against the State Defendants. A third ARP, No. WCI-0725-21, was filed on or about May 9, 2021 and was thus filed after the Complaint in this case was filed on April 26, 2021. Although the United States Court of Appeals for the Fourth Circuit has not decided the issue, the weight of circuit authority establishes that the administrative process must be fully completed before the complaint is filed. *See Neal v. Goord*, 267 F.3d 116, 121-122 (2d Cir. 2001) (holding that inmates must exhaust administrative remedies before filing suit), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (same); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534-35 (7th Cir. 1999) (same); *see also Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624 (D. Md. 2015) ("Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies."). *But see Williams v. Norris*, 176 F.3d 1089, 1090 (8th Cir. 1999) (per curiam) (reversing the district court's dismissal because the prisoner's grievance had been denied "at the time the court ruled"). The Court adopts this position because to do otherwise would undermine the exhaustion requirement by discouraging completion of the ARP process before the initiation of a federal court case. Thus, because the third ARP was not even filed until after the Complaint was filed, it could not form the basis of exhaustion of administrative remedies. Because Barnes failed to exhaust administrative remedies relating to his claims against the State Defendants, the Court will grant the State Defendants' Motion and need not address the State Defendants' remaining arguments.

### III. The Medical Defendants

Construed liberally, Barnes asserts that the Medical Defendants' failures to provide him with lower bunk status in light of his surgically implanted rod, to adequately treat his injuries after his fall on January 4, 2021, and to adequately treat his chronic pain and sleep problems violated the Eighth Amendment. The Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere

14

negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations and internal alterations omitted).  Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances.  *Id.*  Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

### A.   Corizon

As an initial matter, Corizon argues that Barnes has failed to state a claim against it because there is no vicarious liability under § 1983, and a health care contractor for a prison may be held liable under § 1983 only if there was a custom or policy of the contractor which caused the deprivation of the plaintiff's federal rights.  Liability under § 1983 generally attaches only upon personal participation by a defendant in the constitutional violation.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). A private corporation carrying out a state function such as medical care for prisoners may be held liable under § 1983 only upon a showing that it had a custom or policy that caused the deprivation of rights. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999) (applying the custom and policy standard for § 1983 claims against a municipal government to such private contractors); *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003); *see also Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978) (establishing the custom and policy standard for § 1983 claims against a municipal government).

Here, Barnes has failed to plead or demonstrate sufficient facts showing that any of the alleged violations of his rights were the result of a custom or policy of Corizon. Indeed, the Complaint contains no specific factual allegations against Corizon. Accordingly, the Court will dismiss the claims against Corizon.

### B.     Lower Bunk Status

Barnes's primary claim is that the denial of lower bunk status in light of the surgically implanted rod in his leg violates the Eighth Amendment. Although he asserts that he had lower bunk status before 2015, he acknowledges that no medical provider since that time has approved lower bunk status. The medical records reflect that Dr. Poku-Dankway declined to grant lower bunk status in 2019, and Nurse Mace likewise declined to do so when she saw no identifiable problem with Barnes's leg after his fall in January 2021. Dr. Getachew has provided a medical opinion that lower bunk status is not necessary because a review of the medical records reveals no specific evidence that would support the need for lower bunk status. Where the records show that a November 2020 x-ray revealed that the rod in Barnes's leg remained stable and intact, and the various medical providers consistently observed no difficulty walking or other objective signs that Barnes had any abnormality or other problem affecting his ability to use that leg, the Court cannot conclude that the decisions not to authorize lower bunk status constituted deliberate indifference to a serious medical need. At worst, there is a disagreement between the inmate and medical providers that does not establish an Eighth Amendment violation. *See Scinto*, 841 F.3d at 225.

Since Nurse Mace's determination, Barnes has fallen two more times, once after the filing of the Complaint. At this point, the medical providers should seriously reconsider whether lower bunk status would be appropriate. Nevertheless, where even a negligent action does not violate the Eighth Amendment in the absence of deliberate indifference, *Jackson*, 775 F.3d at 178, the

16

Court finds that based on the information known at the time of the relevant decisions, Barnes cannot succeed on his claim that the decisions not to grant him lower bunk status constituted deliberate indifference and thus established an Eighth Amendment violation.

### C.    Medical Treatment

As to Barnes's separate claim that Nurse Mace failed to provide timely and adequate medical care following his January 4, 2021 fall, although Barnes has asserted that he sustained injuries to his head, back, hip, and leg, he has not demonstrated that those injuries were of sufficient severity to constitute objectively serious medical needs within the meaning of the Eighth Amendment.  Not only did Nurse Mace not find objective signs of such injuries during her examination of January 10, 2021, but the medical records from routine nursing visits on January 6 and 8, 2021 and from subsequent medical visits following January 10, 2021 show no signs of significant injuries that could meet that standard.  Barnes's unverified allegation he needed stitches and had his cellmate administer them is contradicted by the subsequent medical records in which there are no observations of any stitches or other evidence of a head wound.  The Court therefore finds insufficient evidence to establish a serious medical need warranting immediate medical treatment as of January 4, 2021.

Even if such evidence existed, there is also insufficient evidence to establish the subjective prong of the deliberate indifference standard.  Although Barnes asserts that Nurse Mace delayed in providing medical treatment, there is no evidence that she was actually made aware of Barnes's fall or any resulting injuries until she saw Barnes on January 10, 2021.  Where she did not observe identifiable injuries and believed that Barnes's pain medication and muscle rub were sufficient to address his needs, there was at most a disagreement over the proper medical treatment, not deliberate indifference.  Finally, while Barnes has asserted in his memorandum in opposition to

17

the Motions that Nurse Mace did not even examine his injuries, where there is no evidence of observable injuries in any of the medical records following January 10, 2021, this unsupported assertion is insufficient to establish subjective deliberate indifference to an objectively serious medical need. The Court will therefore grant summary judgment on this claim.

### D.    Pain Management

The medical records reflect that while Barnes submitted numerous sick call requests regarding pain medication, he consistently received his prescribed pain medications over the relevant time period. They also show regular chronic care visits with physicians relating to his pain issues. Dr. Getachew has provided an expert opinion that stronger pain medications such as opiates are not medically necessary where Barnes has not shown signs objective signs of acute pain or impairment of daily activities. Although Barnes may have wanted more or different pain medications and more formal consultations beyond his regular chronic care visits, these complaints reflect disagreements with medical providers on the course of care which would not establish an Eighth Amendment violation. *See Scinto*, 841 F.3d at 225. Based on this record of consistent provision of pain medication and regular chronic care visits, the Court cannot find deliberate indifference by the medical providers to Barnes's pain issues. In any event, where neither Dr. Getachew nor Nurse Mace were directly involved in Barnes's chronic care for pain, there is no basis to find deliberate indifference by these specific defendants.

### E.    Sleep Study

As for the sleep study, Barnes first requested it in September or October 2020. Although Dr. Mohammed requested such a study, that request was not approved, and Dr. Getachew asserts that it was not medically necessary. Where the medical records show no serious impact from Barnes's snoring issues other than fatigue from waking up, they do not support the conclusion that

18

Barnes's sleep issues constitute a serious medical need within the meaning of the Eighth Amendment. Even if they did, the decision not to provide the sleep study amounts to a disagreement with a medical decision that does not violate the Eighth Amendment. *See Scinto*, 841 F.3d at 225. The Court will therefore grant summary judgment to Dr. Getachew on this claim.

## F.     Dr. Mohammed

Dr. Mohammed has not yet been served with the Complaint. However, the Court's determination that the Barnes lacks viable claims against Dr. Getachew and Nurse Mace applies equally to Dr. Mohammed. In fact, the only allegation in the Complaint against Dr. Mohammed is the statement that he is "lying about putting in [a] request for consult for pain management and sleep study." Compl. at 4. Where the Court has found no deliberate indifference based on the failure to provide these forms of treatment, this lone statement is insufficient to state a claim against Dr. Muhammed, so the Court will dismiss the claims against him for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b) (2018) (directing courts to dismiss claims by self-represented, prisoner plaintiffs proceeding *in forma pauperis* if they fail to state a claim upon which relief may be granted).

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss or, in the Alternative, Motion for Summary Judgment, will be GRANTED. The Complaint will be DISMISSED as to Dr. Mohammed pursuant to 28 U.S.C. § 1915 and DISMISSED WITHOUT PREJUDICE as to the State Defendants for failure to exhaust administrative remedies. A separate Order shall issue.

Date:  September 8, 2022

THEODORE D. CHUANG
United States District Judge

19